UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cr-95-MOC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **AARON LEE HENDRICKSON,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 98). The Government has responded in opposition to the motion, and Defendant has filed a Reply. (Doc. Nos. 100, 101).

I.     BACKGROUND

Defendant pleaded guilty, pursuant to a plea agreement, to maliciously damaging property by fire or explosives (18 U.S.C. § 844(i)); attempted Hobbs Act robbery (18 U.S.C. § 1951); and using an explosive to commit a felony (18 U.S.C. § 844(h)). See (PSR, Doc. No. 63, pp. 1–2). Pursuant to the plea agreement, the Government dismissed three additional counts— two counts of using a firearm (those being a destructive device and a shotgun) in furtherance of a crime of violence (18 U.S.C. § 924(c)) and an additional count of attempted Hobbs Act robbery. (Id. at 4–5; Doc. No. 48 at 1). In 2016, this Court sentenced Defendant to a total of 180 months' imprisonment (60 months each for Counts One and Two to be served concurrently, followed by 10 consecutive years for Count Three). (Doc. No. 71). Defendant's release date is January 2, 2030.[1]

---

[1] BOP, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last accessed

The offense conduct demonstrated a reckless disregard for human life. Defendant twice attempted to rob a McDonald's restaurant in Weaverville, North Carolina, in 2014. (PSR, Doc. No. 63, p. 6). For the first attempt, Defendant constructed a pipe bomb and a gasoline bomb to use as a diversion to lure law enforcement officers away from the target restaurant. (Id.). He placed the bomb under a 1,000–gallon propane tank next to a gas station several miles away from the McDonald's and detonated the bomb. (Id.). Fortunately, the propane tank did not explode as intended. (Id.). As emergency workers responded, Defendant then traveled to the McDonald's and began to walk toward the restaurant armed with a shotgun with an intent to rob it. (Id.). He abandoned the plan, however, because he believed there were too many customers present at the time. (Id.).

Defendant made a second attempt to rob the same McDonald's about two weeks later. (Id.). Defendant placed a food order at the drive-through, paid for the food at the first window, and then asked to speak to the manager. (Id.). Defendant then handed the manager an envelope and told her, "I was supposed to give this to you." (Id.). He then drove off without picking up his food from the second window. (Id.). The note contained a hoax bomb threat and a complex series of demands and instructions for the manager to bring the restaurant's money out of the store and to Defendant's car or else Defendant would detonate the bomb, killing everyone inside. (Id.). The manager did not comply and instead called the police. (Id.). After temporarily closing the restaurant to conduct a thorough search, the police did not locate any bombs. (Id.).

Defendant was interviewed twice by law enforcement officers. (Id. at 7–8). During the first interview, Defendant acknowledged he had delivered the note during the second robbery

---

October 3, 2022).

-2-

Case 1:15-cr-00095-MOC-WCM   Document 102   Filed 11/03/22   Page 2 of 6

attempt, but he claimed that an unknown woman had flagged him down in the parking lot and had asked him to deliver it. (Id. at 7). Surveillance video demonstrated that to be a lie, and Defendant falsely asserted that he claimed his food from the drive–through when he did not. (Id.). After developing more evidence, law enforcement officers interviewed Defendant again about two months later, during which Defendant admitted to both robbery attempts and to creating the pipe bomb and using it as a diversion. (Id. at 8).

## II.     DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A). As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

In United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit held that the

-3-

policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–84. According to McCoy, because Section 1B1.13 specifies its applicability only to motions brought by the Bureau of Prisons, the policy statement cannot apply in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284.

McCoy noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. McCoy thus holds that although Section 1B1.13 is no longer the applicable policy statement for compassionate release motions brought by inmates, defendants still must meet the "heightened standard" required by Section 3582(c)(1)(A)(i). Both before and after McCoy, defendants must clear the "extraordinary and compelling" threshold set forth in the statute. As McCoy put it, such relief will be granted only in "truly exceptional cases[.]" Id. at 287–88.

In support of his motion for compassionate release, Defendant raises two arguments. He first argues that the First Step Act ended the practice of "stacking" Section 924(c) sentences, so he claims—despite both Section 924(c) charges having been dismissed pursuant to his plea bargain—that he would have received a more favorable plea offer today. He also argues that attempted Hobbs Act robbery is no longer considered a "crime of violence," so he would not be charged with a Section 924(c) offense today.

Defendant's first argument for compassionate release fails because he was not sentenced

-4-

Case 1:15-cr-00095-MOC-WCM   Document 102   Filed 11/03/22   Page 4 of 6

under Section 924(c). He correctly notes that the Court may consider a stacked Section 924(c) sentence as an extraordinary and compelling reason for release given the enormous disparity between one who received such a sentence and another who is sentenced following the change in the law. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). But all the defendants in McCoy, unlike Defendant, were sentenced to stacked Section 924(c) sentences and received between 35 and 53 years of imprisonment as a result. Id. at 274. Here, the Government dismissed both Section 924(c) counts as part of Defendant's plea agreement, so there is no disparity to remedy between his sentence and one imposed today under the same facts post-First Step Act.

Defendant claims that he would have received a more favorable plea offer without the Section 924(c) stacking, but the Government asserts in its response that it would not offer less than the existing plea offer despite the change in the law. In any event, "[a] valid plea agreement ... requires knowledge of existing rights, not clairvoyance," and when a defendant accepts a plea bargain, "[h]e cannot now ask to re-bargain . . . because of changes in the law." United States v. Blick, 408 F.3d 162, 170 (4th Cir. 2005) (internal citations omitted). Here, Defendant received the full benefit of his bargain, and his favorable plea agreement protected him from any Section 924(c) stacking, so there is no extraordinary and compelling reason to grant him a further reduction in sentence.

Defendant's second argument is also meritless. He correctly observes that the Supreme Court recently held that attempted Hobbs Act robbery is not a "crime of violence" that can support a Section 924(c) conviction, and thus he would not be charged with this offense in connection with an attempted robbery today. United States v. Taylor, 142 S. Ct. 2015 (June 21, 2022). However, again, Defendant was not sentenced under Section 924(c). The only

consecutive sentence this Court imposed on Defendant was for a violation of 18 U.S.C. § 844(h) (Count Three), but this provision only requires that the predicate offense be a federal felony—it does not require that a defendant commit a "crime of violence." This Court's sentence therefore is unaffected by Taylor, and thus there is no extraordinary and compelling reason to justify relief.

In addition to being unable to demonstrate extraordinary and compelling reasons for this request, the Section 3553(a) factors demand Defendant's continued incarceration. As noted, Defendant's conduct was serious and could have caused catastrophic damage and loss of life. Defendant constructed a bomb and placed it under a 1,000-gallon propane tank adjacent to a gas station to divert law enforcement's attention away from his attempt to rob a restaurant with a shotgun. Two weeks later he attempted to rob the restaurant again with a hoax bomb threat that caused fear and required closure of the McDonald's to conduct a police search for bombs. Defendant's motion offers nothing to cause the Court to consider the Section 3553(a) factors any differently than it did in 2016. The Court will, therefore, deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 98), is **DENIED**.

Signed: November 3, 2022

Max O. Cogburn Jr
United States District Judge

-6-

Case 1:15-cr-00095-MOC-WCM  Document 102  Filed 11/03/22  Page 6 of 6